Filed 4/18/25  P. v. Cravens CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>TRAVIS CORBIN CRAVENS,<br><br>      Defendant and Appellant. | A172573<br><br>(Riverside County<br>Super. Ct. No. INF2300683) |

A jury found Travis Corbin Cravens guilty of, among other offenses, corporal injury (Pen. Code, § 273.5, subd. (a))[1], and found that he personally inflicted great bodily injury upon the victim in the commission of that offense (§ 12022.7, subd. (e)).

Cravens challenges the sufficiency of the evidence supporting the great bodily injury enhancement as well as the trial court's imposition of an administrative fee and domestic violence fund fee at sentencing.  We conclude sufficient evidence supports the great bodily injury enhancement.  However, we agree the challenged fees were erroneously imposed and modify the judgment accordingly.

---

[1] All further statutory references are to the Penal Code.

1

## FACTUAL AND PROCEDURAL BACKGROUND

In 2024, Cravens was charged by amended information with corporal injury on Jane Doe, his former girlfriend (§ 273.5, subd. (a)); assault with a deadly weapon, to wit, a cell phone (§ 245, subd. (a)(1)); and false imprisonment (§ 236). The information also alleged, as relevant here, that Cravens had inflicted great bodily injury on Doe within the meaning of section 12022.7, subdivision (e) in the commission of the corporal injury.

*Trial Evidence*

A jury trial took place in February 2024, where the following pertinent evidence was presented.

*Prosecution Case*

Doe testified she and Cravens were in a relationship from July 2022 to January 2023. Over time, Cravens became emotionally dysregulated and unstable, which led to "episodes" where he broke things and caused problems.

On January 22, 2023, Cravens took a knife and stabbed the blow-up mattress on which they slept. The following night, January 23, they went to bed early; Doe woke up around 9:30 p.m. to find the mattress had deflated. She drove to a store to purchase a new mattress while Cravens was still asleep. Doe was unable to replace the mattress and decided to stop by a casino on the way home.

While Doe was at the casino, Cravens called her repeatedly. When she finally answered, he angrily called her names, screamed at her, and insisted she come home. When Doe arrived home, Cravens was on the street waving his arms, yelling at her, and hitting the car. He told her to park in the garage, but she had never done so before and instead parked on the street. As Doe got out of her car, Cravens yelled at her and told her to go into the garage. She acquiesced, and he closed the garage door behind her.

Inside the garage, Cravens pushed Doe against the wall and hit her on the top of her forehead with the corner of his cell phone. The cell phone was in a heavy-duty case made of thick plastic with sharp edges. Doe believed Cravens struck her as hard as he could and intended to hit her on the forehead. The strike caused an inch or inch-and-a-half cut from Doe's hairline down the middle of her forehead and blood poured onto her face, her sweatshirt, and the floor. Doe described the pain from the cell phone strike as a 10 out of 10 and said it "felt like a rock or like a sharp dagger"; she knew she needed to go to the hospital to get stitches. Doe did not hit herself on anything in the garage that would have caused the injury.

Doe ran inside the house and Cravens chased her. As Doe tried to exit through the front door, Cravens came up behind her and slammed the door very hard on her face, causing her head to hit the door jamb. Doe felt an impact to her cheeks and jaw, causing her tooth to crack and her head to "rattle[]" such that her vision changed and she "saw stars."

Doe raced from the house to a nearby 7-Eleven, where she asked an employee to call 911 for help. The 7-Eleven employee testified that Doe came into the store with her face bloodied and cut and said her boyfriend had beat her up.

Police responded to the 7-Eleven to find Doe with dried blood, a forehead laceration, and bruising on her cheekbone. An ambulance took Doe to the hospital, where she received seven stitches on her forehead. The next day, Doe's "whole face swelled up" and her bones ached. She noticed her jaw "was going to the side" afterwards and continued to do so occasionally even a year later (at the time of trial). Doe's cracked tooth fell out about 10 days after the incident. The strike from Cravens's cell phone caused a large bump on her head for a long time, even after the stitches were removed three to

four weeks later.  The cut on Doe's forehead left a scar, which she indicated was still visible at trial.  She reported having short-term memory loss and a lost sense of direction.

Photos taken by police on the night of the incident, which were admitted at trial, showed substantial blood on Doe's face as well as on her sweatshirt, which she attributed to the cell phone strike.  The photos showed the laceration on Doe's forehead was approximately one inch long.  Photos taken the following day showed bruising on her cheekbone.

*Defense Case*

Cravens's defense was that Doe's testimony as to how she sustained her injuries was untrue, and defense counsel framed the case as a credibility contest between Doe and Cravens.  Cravens testified in his own defense, as follows.

On the night of the incident, Cravens put a pizza in the oven, told Doe about the pizza, and went to sleep because he was not feeling well.  He later woke up to find the house filled with smoke from the oven and Doe not home.  He called her to find out where she went because he was not supposed to be at the house alone (Doe was renting the home and the homeowner did not want Cravens there if Doe was not present), and it was the third time she had left him asleep to go to the casino.

When Doe returned home, Cravens was agitated and yelled at her for abandoning him.  He told her: " 'Get your ass in the garage,' " " 'you made me look like an idiot,' " and yelled at her to get out of the car and come inside.  They walked to the garage together and Cravens closed the door.

Inside the garage, Cravens continued to yell at Doe for abandoning him, called her various obscenities, and threw his phone at a wall out of anger.  After his phone hit the wall (not Doe), she "spazzed out" and hit her

head on the closed garage door. Cravens then tried to calm Doe down as she was profusely bleeding and running through the house "like a maniac." Doe then went toward the door of the house and left. Cravens got his belongings and stayed at friend's house for three days.

Cravens flatly denied striking Doe or hurting her with his phone. He also denied chasing her through the house to prevent her from leaving. When asked whether he slammed the door on her face, Cravens stated it was an accident as he was just trying to close the door. He denied seeing bruising on her cheek from the door hitting her.

Cravens's friend testified that Doe said after the incident that she " 'had [Cravens] put in jail.' " The friend also stated Doe told him on two subsequent occasions that he should " '[p]ick the right side' " because he knew " 'what happens when people go against [Doe].' " Another defense witness met Doe a few months after the incident; at that time, Doe stated that she sends men to jail if they do not do what she wants.

*Verdict*

The jury found Cravens guilty of corporal injury on Doe (§ 273.5, subd. (a)) and found true the allegation that he personally inflicted great bodily injury upon her in the commission of that offense (§ 12022.7, subd. (e)).

The jury further found him not guilty of assault with a deadly weapon but guilty of the lesser included misdemeanor offense of assault (§ 240). Finally, the jury found Cravens not guilty of false imprisonment but guilty of the lesser included misdemeanor offense of restricting or confining Doe against her will (§ 237).

*Sentencing Hearing*

On March 21, 2024, the court sentenced Cravens to a total of six years in prison, consisting of the mid-term of three years for infliction of corporal

5

injury and three years for the great bodily injury enhancement. The court also imposed a 180-day sentence for assault, which was stayed under section 654, and a concurrent one-year sentence for restricting or confining Doe.

As relevant here, Cravens was ordered to pay victim restitution in an amount to be determined by probation and an administrative fee equal to 15 percent of victim restitution. The court also imposed a $500 Domestic Violence Fund fee pursuant to section 1203.097, subdivision (a)(5).[2] Cravens appealed.[3]

## DISCUSSION

Cravens raises two issues on appeal. First, he argues there is insufficient evidence to support the great bodily injury enhancement. Second, Cravens asserts the 15 percent administrative fee and $500 domestic violence fee were improperly imposed. We reverse the challenged fees but otherwise affirm the judgment.

## I. Sufficient Evidence Supports the Great Bodily Injury Enhancement

Cravens avers the jury's finding that he personally inflicted great bodily injury on Doe under section 12022.7, subdivision (e) in the commission of the corporal injury offense is not supported by substantial evidence as there were no broken bones or guns involved, the forehead cut was "small," and Doe did not require prolonged treatment. He further contends this is the rare case where Doe's testimony as to the severity of her pain must be

---

[2] The parties refer to this as a $500 fine, but the statute indicates it is a fee. (§ 1203.097, subd. (a)(5)(A), (D).)

[3] On January 21, 2025, this case was fully briefed. On February 25, 2025, the case was transferred by California Supreme Court Order from the Fourth Appellate District, Division Two (where it had been designated case No. E083564) to the First Appellate District.

6

rejected.  We are not convinced.

We review the sufficiency of the evidence to support an enhancement using the same well-settled standard we apply to a conviction.  (*People v. Wilson* (2008) 44 Cal.4th 758, 806.)  Specifically, " ' "we review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." ' "  (*Ibid*.)  We presume every fact in support of the judgment the jury could have reasonably deduced from the evidence.  (*Ibid.*)

Great bodily injury for purposes of section 12022.7 is defined as "a significant or substantial physical injury" (§ 12022.7, subd. (f)), as distinguished from trivial, insignificant, or moderate harm.  (*People v. Cross* (2008) 45 Cal.4th 58, 63–64 (*Cross*).)  Proof that an injury meets the definition of " 'great' " is "commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury."  (*Id.* at p. 66.)  However, there is no requirement that the injury is "so grave as to cause the victim ' "permanent," "prolonged," or "protracted" ' bodily damage."  (*Id.* at p. 64.)

The California Supreme Court "has long held that determining whether a victim has suffered physical harm amounting to great bodily injury is not a question of law for the court but a factual inquiry to be resolved by the jury."  (*Cross*, *supra*, 45 Cal.4th at p. 64.)  " ' "A fine line can divide an injury from being significant or substantial from an injury that does not quite meet the description." ' [Citations.] Where to draw that line is for the jury to decide."  (*Ibid.*)

Witness credibility determinations and the truth or falsity of the facts

on which those determinations depend are the exclusive province of the factfinder. (*People v. Maciel* (2013) 57 Cal.4th 482, 519.) Therefore, for an appellate court to reject statements given by a witness who has been believed by a factfinder, " ' "there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions." ' " (*Ibid.*)

Presuming every fact in support of the judgment, we conclude a reasonable trier of fact could find that Doe's physical injuries were "significant or substantial." (§ 12022.7, subd. (f).) Doe testified that the cell phone strike left her with a cut on her forehead and blood on her face and sweatshirt. She described the pain from that strike as a 10 out of 10 and likened it to being hit by a "rock" or "sharp dagger." Her account was supported by the 7-Eleven employee's testimony that she arrived with a bloodied and cut face, as well as the police photos taken that night showing blood on her face and sweatshirt and a one-inch laceration on her forehead. Her injuries required her to be taken by an ambulance to the emergency room, where she received seven stitches on her forehead. She was left with a large bump, even after the stitches were removed three to four weeks later, and a scar on her forehead.

In addition to the forehead injury, Doe testified that Cravens slammed the door on her face against the door jamb, causing bruising to her cheekbone—which was corroborated by police photos taken the following day—and one of her teeth to crack. She stated that her face swelled the next day and her tooth fell out 10 days later.

On this record, there was sufficient evidence for the jury to find Doe's bodily injuries rose to the level of "great" for purposes of section 12022.7. (See *People v. Medellin* (2020) 45 Cal.App.5th 519, 529 [sufficient evidence for

jury to find great bodily injury to both victims where punch to first victim caused a quarter-to half-inch-long cut that required three stitches, left a little scar, and loosened his tooth, and punch to second victim required seven stitches that were in place for two weeks, swelling, and " 'pretty severe[]' " bleeding].)[4]

Cravens's contention that the injuries were insufficient as Doe was not hospitalized, did not require follow-up treatment, and did not face prolonged pain is unavailing. Regardless of whether Doe was admitted to the hospital, her injury was severe enough to require seven stitches—which had to be removed weeks later—and could still be "significant or substantial" without being prolonged or protracted. (§ 12022.7, subd. (f); *Cross*, *supra*, 45 Cal.4th at p. 64.) And, contrary to Cravens's assertion that Doe's testimony as to the severity of the pain was inherently unbelievable, the jury apparently disagreed and credited her testimony over his. It was the jury's sole province to make that credibility determination, and nothing in the record (such as a physical impossibility) warrants our rejection of her testimony. (See *People v. Maciel*, *supra*, 57 Cal.4th at p. 519.)

Further, Cravens's reliance on *People v. Martinez* (1985) 171 Cal.App.3d 727 is misplaced. In that case, the appellate court found insufficient evidence to support a great bodily injury enhancement where the defendant stabbed the victim " 'a little bit' " in the back, which left only a minor laceration that did not require the victim to be taken to the hospital.

_____

[4] Although Cravens contends *People v. Medellin*, *supra*, 45 Cal.App.5th 519 does not support a finding of substantial evidence as the court in that case reversed the enhancements, it did so based on a finding of instructional error, not because the evidence was insufficient to support the great bodily injury enhancements. (See *id*. at pp. 533–536.) Indeed, the court explicitly found the evidence sufficiently proved great bodily injury. (*Id*. at p. 529.)

(*Id.* at pp. 733, 735–736.) By contrast, as previously discussed, the evidence in this case showed Cravens struck Doe directly on her forehead, leaving a one inch cut and requiring her to be taken to the hospital to receive stitches.

Finally, we decline Cravens's invitation to find it "highly significant" for purposes of the great bodily injury enhancement that the jury found him not guilty of assault with a deadly weapon (§ 245, subd. (a)(1)). The jury made no specific findings in its verdict and therefore cannot be said to have found or rejected any facts in its acquittal that would bear upon the great bodily injury enhancement. (See *People v. Towne* (2008) 44 Cal.4th 63, 86 ["Unless specific findings are made, 'the jury cannot be said to have "necessarily rejected" any facts when it returns a general verdict . . . .' "].)

## II. The Trial Court Erred by Imposing the Administrative and Domestic Violence Fees

Cravens challenges the court's imposition of the 15 percent administrative fee applicable to victim restitution (§ 1203.1, former subd. (*l*)), which was repealed by the Legislature prior to his March 2024 sentencing (Stats. 2021, ch. 257, § 22), as well as its imposition of a $500 domestic violence fee that applies when a defendant is "granted probation" (§ 1203.097, subd. (a)(5)(A)).

The Attorney General agrees the challenged fees were imposed in error, as do we. (*People v. Evers* (2023) 97 Cal.App.5th 551, 555 [administrative fee imposed under section 1203.1, former subdivision (*l*) invalid where defendant is sentenced after its January 1, 2022 repeal]; *People v. Kirvin* (2014) 231 Cal.App.4th 1507, 1520 [domestic violence fee under section 1203.097, subdivision (a)(5)(A) erroneously imposed where defendant is sentenced to prison rather than " 'granted probation' "].)

10

### DISPOSITION

The judgment is modified to remove the 15 percent administrative fee on victim restitution and the $500 domestic violence fee. As modified, the judgment is affirmed.

The trial court is directed to amend the abstract of judgment to reflect these changes and forward a certified copy of the amended abstract to the Department of Corrections and Rehabilitation.

_____
PETROU, J.


WE CONCUR:


_____
FUJISAKI, ACTING P. J.


_____
RODRÍGUEZ, J.


People v. Cravens (A172573)